**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SAEID MOTEVALI, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> MARCO RUBIO, *et al.*, <br><br> *Defendants*. | Civil Action No. 24-1029 (SLS) <br> Judge Sparkle L. Sooknanan |

## MEMORANDUM OPINION

This case involves a father and son seeking to permanently reunite in the United States. In 2019, American citizen Saeid Motevali filed an I-130 Petition on behalf of his father, Alireza Motevaly Alamouti, an Iranian national. After weaving through a maze of administrative steps, Mr. Alamouti interviewed with a consular officer in Sri Lanka in September 2023. About seventeen months have passed since his interview, and the Plaintiffs have yet to receive a final decision on their visa application. With this lawsuit, they seek to compel Marco Rubio,[1] in his official capacity as Secretary of State, and Robert Jachim, in his official capacity as Acting Director of the Department of State's Office of Screening, Analysis and Coordination, to order a final decision on their visa application. The Defendants have moved to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Although the Court is unpersuaded by most of the Defendants' arguments, it agrees that the Plaintiffs have failed to state a plausible claim of unreasonable delay and therefore grants the Defendants' Motion.

---

[1] Although the Plaintiffs named former Secretary of State Antony J. Blinken as the Defendant in the Complaint, current Secretary of State Marco Rubio "is automatically substituted as a party" in his place pursuant to Federal Rule of Civil Procedure 25(d).

## STATUTORY AND REGULATORY BACKGROUND

The Immigration and Nationality Act (INA) was passed in 1952 to, *inter alia*, "reunite families wherever possible[.]" *Fiallo v. Bell*, 430 U.S. 787, 793 (1977). Pursuant to its goal of family reunification, the INA authorizes consular officers to issue immigrant visas to the "immediate relative[s]" of American citizens. *See* 8 U.S.C. § 1204; 8 U.S.C. § 1151(b)(2)(A)(i). Under the INA, immediate relatives are defined as "the children, spouses, and parents of a citizen of the United States, except that, in the case of parents, such citizens shall be at least 21 years of age." 8 U.S.C. § 1151(b)(2)(A)(i). Family reunification continues to be a "guiding principle" in U.S. immigration policy, with Congress providing "clear direction" to the State Department to "adopt a policy of prioritizing immediate relative[s.]" *Immigrant Visa Prioritization*, U.S. Dep't of State: Bureau of Consular Affs., https://perma.cc/LK8P-7D5E. The Department of Homeland Security's U.S. Citizenship and Immigration Services (USCIS) and the Department of State jointly administer the INA. *See Regulations*, U.S. Citizenship & Immigr. Servs., https://perma.cc/U6W5-XDDU; *Laws & Regulations*, U.S. Dep't of State: Bureau of Consular Affs., https://perma.cc/EYN9-SBCE.

An American citizen seeking a visa for an immediate relative must file an I-130 Petition with the USCIS. *Niyomwungere v. Blinken*, No. 24-cv-1990, 2024 WL 5075827, at *1 (D.D.C. Dec. 11, 2024) (citing 8 U.S.C. § 1154(a)(1)(A)(i); 8 C.F.R. § 204.1(a)(1)). USCIS then transfers the Petition to the National Visa Center (NVC), which is the visa application processing center of the Department of State. *Id.* (citing 8 C.F.R. § 204.2(a)(3)). The applicant must then pay a fee and complete additional paperwork, including Form DS-260 (the Electronic Application for Immigrant Visa and Alien Registration). 22 C.F.R. § 42.63. Once the NVC determines that it has the required paperwork, it marks the case "documentarily complete," 9 Foreign Affs. Manual

2

§ 504.1-2(b)–(d), and schedules an interview for the applicant, 22 C.F.R. § 42.62; 9 Foreign Affs. Manual §§ 504.1-2(d)(1), 504.4-6. After the interview, the consular officer "must" either "issue the visa" or "refuse the visa" under INA Sections 212(a), 221(g), or "other applicable law." 22 C.F.R. § 42.81(a) (acknowledging a third option when there is an outstanding order).

## FACTUAL BACKGROUND

The Court draws the facts, accepted as true, from the Complaint and attachments. *Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 619 (D.C. Cir. 2023). It further "takes judicial notice of 'information posted on official public websites of government agencies.'" *Ahmed v. Blinken*, No. 24-cv-153, 2024 WL 4903771, at *2 (D.D.C. Nov. 27, 2024) (quoting *Arab v. Blinken*, 600 F. Supp. 3d 59, 63 n.1 (D.D.C. 2022)).

Mr. Motevali, an American citizen, successfully submitted Form I-130 to USCIS on October 1, 2019, on behalf of his father, Mr. Alamouti, an Iranian national. Compl. ¶¶ 70–72. USCIS approved Mr. Alamouti's I-130 Petition on March 27, 2021, and forwarded it to the NVC, the State Department's visa application processing center. *Id.* ¶ 73. Mr. Alamouti then completed form DS-260, which initiates the formal visa application process. *Id.* ¶¶ 38, 74. After reviewing Mr. Alamouti's paperwork, the NVC designated it "documentarily complete" on May 17, 2023. *Id.* ¶¶ 74–75. A consular officer then interviewed Mr. Alamouti at the U.S. Embassy in Colombo, Sri Lanka, on September 5, 2023. *Id.* ¶ 76. Embassy officials emailed him shortly after, asking him to complete Form DS-5535 (Supplemental Questions for Visa Applicants), which requests fifteen years of background history including addresses, employment, travel, and social media handles. *Id.* ¶ 78. Mr. Alamouti returned the questionnaire on September 12, 2023. *Id.*

Since that date, the Plaintiffs have received no direct communication from the State Department and have repeatedly been told that the visa application remains "refused for

3

administrative processing." *Id.* ¶ 83. The Plaintiffs are aware of other visa applicants who interviewed at the same embassy, some of them after Mr. Alamouti, who were also given non-final Section 221(g) decisions,[2] but who have since been issued visas. *Id.* ¶ 80. The Plaintiffs have inquired multiple times about the status of their visa application and have been told that the office is "waiting for certain clearances to further process the case." *Id.* ¶ 84. Because of the Defendants' failure to process Mr. Alamouti's visa application in a timely manner, the Plaintiffs have experienced both tangible and intangible injuries. They live in "ever-increasing fear that they will be separated." *Id.* ¶ 89. Mr. Alamouti has yet to meet his grandchild, and the likelihood of him doing so is "decreasing every day." *Id.* ¶ 91. This separation is "causing severe emotional distress and psychological harm to the entire family by forcing them to remain separated with no idea when they will be reunited." *Id.* ¶ 92. Beyond the mental anguish, the Plaintiffs describe an "immense amount of financial strain" they have undergone while waiting for a final decision, forcing them to spend "thousands of dollars" to maintain a house in both the U.S. and Iran, pay for trips back and forth, and cover the cost of legal representation. *Id.* ¶¶ 94–95. They have "been forced to spend from their savings and cannot afford any further expenses." *Id.* ¶ 94. The Plaintiffs now feel that they are "left in an untenable situation with no apparent end in sight." *Id.* ¶ 96.

## PROCEDURAL HISTORY

The Plaintiffs filed this action on April 10, 2024, naming the U.S. Secretary of State, Marco Rubio, as well as the Acting Director of the Office of Screening, Analysis, and

---

[2] The Plaintiffs never explicitly state that Mr. Alamouti's visa was denied on Section 221(g) grounds, nor do the Defendants. But based on the language stating that Mr. Alamouti needed to "provide more details in certain sections," this Court will assume it was refused on Section 221(g) grounds. Compl. ¶ 79. A Section 221(g) refusal "means the applicant did not establish eligibility for a visa to the satisfaction of the consular officer." U.S. Dep't of State, Administrative Processing Information, Travel.State.Gov, https://perma.cc/Q8EA-TLJA.

Coordination, Robert Jachim, alleging that both have unreasonably delayed the adjudication of Mr. Alamouti's visa. *See* Compl, ¶ 6. The Plaintiffs request that the Court "[e]njoin" the Defendants from "any further unreasonable delay in [Mr. Alamouti's] pending immigration visa application." *Id.*, Prayer for Relief. They state that the Court has the authority to take this action under the Mandamus Act and three provisions of the Administrative Procedure Act, Sections 706(2), 706(1), and 555(b). *Id.* ¶¶ 100–18 (Mandamus); ¶¶ 119–34 (§ 706(2) of the APA); ¶¶ 135–46 (§ 706(1) of the APA); ¶¶ 147–62 (§ 555(b) of the APA). The Defendants moved to dismiss on June 10, 2024, *see* Defs.' Mot. to Dismiss (Defs.' Mot.), ECF No. 5, and the Plaintiffs filed a Memorandum in Opposition on June 24, 2024, *See* Pls.' Opp'n, ECF No. 6. The Motion is fully briefed.

## LEGAL STANDARDS

"Federal courts are courts of limited jurisdiction." *Arab*, 600 F. Supp. 3d at 64 (quoting *Gunn v. Minton*, 568 U.S. 251, 256 (2013)). To survive a motion to dismiss under Federal Rule of Civil Procedure (12)(b)(1), the plaintiff "bears the burden of establishing jurisdiction by a preponderance of the evidence." *Asadi v. U.S. Dep't of State*, No. 23-cv-1953, 2024 WL 3835409, at *2 (D.D.C. Aug. 15, 2024). When conducting a 12(b)(1) inquiry, courts "must take all the well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Momeni v. Blinken*, No. 23-cv-3421, 2024 WL 4332604, at *2 (D.D.C. Sept. 27, 2024) (quoting *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000)). On top of the complaint, the court may, "where necessary," consider "undisputed facts evidenced in the record." *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

To survive a Rule 12(b)(6) challenge, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiffs satisfy this burden by pleading facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Niyomwungere*, 2024 WL 5075827, at *2. Courts reviewing a 12(b)(6) motion must "consider the whole complaint, accepting all factual allegations as true, 'even if doubtful in fact.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). While courts must liberally construe the facts presented, they are not to "assume the truth of legal conclusions . . . nor . . . accept inferences that are unsupported by the facts set out in the complaint." *Id.* (quoting *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015)).

## DISCUSSION

The Defendants advance several arguments in support of dismissal, all of which have been raised in many cases in this District. At threshold, they challenge the Plaintiffs' standing and raise the consular non-reviewability doctrine as a bar to this Court's review. Defs.' Mot. at 2–39. On the merits, they argue that the Plaintiffs have failed to plead a plausible claim of unreasonable delay. *Id.* at 40–47. The Court is unpersuaded by all of the Defendants' arguments but one. Upon thoughtful review of the record, it concludes that the Plaintiffs have failed to plausibly show that the delay is unreasonable, an incurable error under Rule 12(b)(6). On that ground alone, the Court grants the Defendants' Motion to Dismiss.

### A.  Standing

Standing sets the stage, "as it must." *Ahmed*, 2024 WL 4903771, at *2. "Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies,'" so "plaintiffs 'must establish that they have standing to sue.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). To satisfy the "irreducible constitutional minimum" of standing, a plaintiff must establish: "(1) an 'injury in fact' that is

6

'concrete and particularized' as well as 'actual or imminent'; (2) a 'causal connection' between the injury and the challenged conduct; and (3) a likelihood, as opposed to mere speculation, 'that the injury will be redressed by a favorable decision.'" *Ark Initiative v. Tidwell*, 749 F.3d 1071, 1075 (D.C. Cir. 2014) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). The Defendants challenge the first and third prongs of standing.

### 1. Injury

The Defendants first argue that there is "no legally cognizable injury" because "neither the procedural harm of alleged delay nor the ultimate harm of an inability to reunite in this country supports standing in this case." Defs.' Mot. at 24–25. But the Plaintiffs allege that they have suffered both emotional harm and financial harm stemming directly from the delay in receiving a final decision on Mr. Alamouti's visa. Compl. ¶ 7. Courts in this District have "consistently rejected [the] argument" that this type of "procedural injury" does not satisfy standing—finding that a plaintiff suffers an injury when an unreasonable delay in processing their visa application "causes financial or other hardship," such as "separation from family members." *Ahmed*, 2024 WL 4903771, at *3. That is what the Plaintiffs allege here, which is sufficient to meet the first prong of standing, making this "a real controversy with real impact on real persons," *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021).

### 2. Redressability

The Defendants next argue that because neither Secretary Rubio nor Director Jachim can "favorably re-adjudicate an application for a visa," they should be dismissed as improper Defendants.[3] Defs.' Mot. at 5. Turning first to Secretary Rubio, the Defendants argue that the INA

---

[3] Although the Defendants do not explicitly characterize this as a standing argument, the Court will follow others in this District and "construe" it "as a redressability challenge." *Sharifymoghaddam v. Blinken*, No. 23-CV 1472, 2024 WL 939991, at *3 (D.D.C. Mar. 5, 2024).

"grants consular officers exclusive authority to review applications for visas, *precluding even the Secretary of State* from controlling their determinations." Defs.' Mot. at 6. The Court, like numerous others, finds this argument "wholly unpersuasive." *Sharifymoghaddam v. Blinken*, No. 23-cv-1472, 2024 WL 939991, at *3 (D.D.C. Mar. 5, 2024). As other courts in this District have noted, "nothing precludes [the Secretary] from directing [consular officers] to *decide* pending applications 'within a reasonable time,' as the APA requires." *Khazaei v. Blinken*, No. 23-cv-1419, 2023 WL 6065095, at *4 (D.D.C. Sept. 18, 2023) (emphasis added); *see also Janay v. Blinken*, 743 F. Supp. 3d 96, 105 (D.D.C. 2024) ("Defendant fails to explain why [the Secretary's authority] falls short of allowing [him] to ensure that no specific application, once brought to his attention, has fallen through the cracks and to ensure that such an application is resolved without undue delay.").

Whether Director Jachim is a proper defendant is newer territory. Mr. Jachim, as the lead of the State Department's Office of Screening, Analysis, and Coordination (SAC), oversees a team that renders security advisory opinions (SAO) on visas. *See* 1 FAM 254.2-1, https://perma.cc/NA52-WCZC. Consular officers who issue a refusal under Section 221(g) must immediately "request a [security advisory opinion] from SAC." Compl., Ex. D ¶ 15, ECF No 1-4. The analyst then "assesses . . . the derogatory information" to determine how to proceed and "prepare[s] a memo . . . [to] provide a recommendation to the consular officer who is responsible for making the final decision." *Id.* ¶ 26. These facts suggest that Mr. Jachim plays a major role in overseeing the "administrative processing" of visas refused under Section 221(g). At this stage of the proceedings, the Court concludes that Mr. Jachim is a proper Defendant.

Finally, the Defendants argue that any relief from this Court would not remedy the Plaintiffs' injuries. Defs.' Mot. at 31. Not so. The Plaintiffs' injuries stem from the limbo that the

State Department's quasi-refusal has left them in—unsure whether they can live together as a family in the United States or not. An order compelling a final decision would certainly alleviate this uncertainty. *See, e.g.*, *Azeez v. Murphy*, No. 23-cv-1947, 2024 WL 3924565, at *2 (D.D.C. Aug. 23, 2024) ("The Secretary of State 'oversees [the Department of State], which is responsible for adjudicating visa applications,' and an order from this Court '[m]andating that Defendants process Plaintiff's parents' visa applications . . . as soon as reasonably possible' would redress Azeez's claimed injuries from the allegedly unreasonable delay[.]"). At bottom, the Defendants mischaracterize the Plaintiffs' request for a final decision as a crusade to win a favorable decision on Mr. Alamouti's visa application. *See* Defs.' Mot. at 16 ("[T]he Secretary of State cannot *favorably* re-adjudicate an application for a visa." (emphasis added)). The fact that the Plaintiffs' desire for resolution is tinged with hope does not change the nature of their request. Like many other plaintiffs asking this court to compel a final decision in these circumstances, the Plaintiffs ultimately seek closure. A final decision on their visa application would grant them just that.

### B.      Consular Non-Reviewability

Next up is the Defendants' argument that the consular non-reviewability doctrine bars this Court's review. Defs.' Mot. at 18–24. For that, they rely on a D.C. Circuit case, *Baan Rao v. Pompeo*, arguing that it "shields a consular officer's decision to issue or *withhold* a visa." *Id.* at 18 (quoting *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021) (emphasis added)). True enough. But the operative word in that quote is "decision." While the Defendants argue that a consular officer reached a decision on Mr. Alamouti's visa application, the Plaintiffs' Complaint tells us otherwise. *See* Defs.' Mot. at 23 ("[A]s required by federal regulation, the consular officer refused the Visa Application pursuant to INA § 221(g)."); *but see* Compl. ¶ 55 (noting that the "FAM categorizes Section 221(g) refusals [that are] issued for the purpose of conducting

9

administrative processing as 'Quasi-Refusal Cases'") (quoting 9 FAM § 504.11-3(B)). According to the Complaint, on the State Department's website, Mr. Alamouti's visa status reads: "refused for administrative processing . . . the case will remain refused while undergoing such processing . . . [and you] will be contacted if additional information is needed." Compl. ¶ 83. The Plaintiffs have pressed for more information and have received emails reiterating the same. *See* Compl. ¶ 84. ("[Y]our case is still in administrative processing, our office is waiting for certain clearances to further process the case.").

The Defendants nonetheless cling to the notion that the decision is somehow final. *See* Defs.' Mot. at 23 (arguing that the Court lacks subject matter jurisdiction because "the consular officer has already rendered a decision on [the] Plaintiff's Visa Application"). The State Department elaborates on this so-called final decision on a page curiously titled "Administrative Processing Information." *See* Department of State, *Administrative Processing Information*, https://perma.cc/SG3E-B35C. The Defendants insist that this language merely signals that "the applicant did not establish their eligibility for the requested visa to the satisfaction of the officer." Defs.' Mot. at 15. But this is, again, at odds with the Department of State's explanation, which notes: "It is possible that a consular officer will reconsider a visa application refused under 221(g) at a later date, based on additional information . . . and determine that the applicant is eligible." *See* Dep't of State, Administrative Processing Information, https://perma.cc/SG3E-B35C. The words "final" and "reconsider" are inarguably at odds. The Court is thus unpersuaded.

It is not alone. Myriad other decisions from this District, many with nearly identical facts, have outright rejected the idea that a "refusal" is a final decision. *See, e.g.*, *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 16 (D.D.C. 2022) (holding that while the State Department "may choose[] to *characterize* a section 221(g) notification as a refusal," "that magic

10

word is not a get-out-of-review-free card" (cleaned up)); *see also Vulupala v. Barr*, 438 F. Supp. 3d 93, 98 (D.D.C. 2020) ("Defendants . . . hang their hat on the agency's use of the word 'refuse' . . . . But that elevates form over substance. As other courts have found, the focus should be on what is actually happening[.]"). The timing of a decision and the decision itself are distinct— one procedural and the other substantive. Because of this, the cloak of protection that the consular non-reviewability doctrine affords does not descend until the procedural steps are complete. *See Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Kerry*, 168 F. Supp. 3d 268, 290 (D.D.C. 2016) ("[A]s Plaintiffs point out, the doctrine of consular nonreviewability is not triggered until a consular officer has made a decision with respect to a particular visa application." (emphasis omitted)); *see also Didban v. Pompeo*, 435 F. Supp. 3d 168, 174 (D.D.C. 2020) (affirming judicial review when a plaintiff challenges not the government's decision, but its "*failure to decide*" (emphasis in original)). As Mr. Alamouti's visa is "undergoing . . . processing," Compl. ¶ 83, the Defendants cannot use the consular non-reviewability doctrine to evade judicial review.

### C.     Clear and Non-Discretionary Duty

The Defendants next argue that the Plaintiffs have failed to identify a "clear, non-discretionary duty" under the APA and the Mandamus Act that would require the government to "adjudicate . . . any specific visa application." *See* Defs.' Mot. at 32. Once again, the Defendants tread familiar ground. Many courts in this District have rejected that argument, finding that government officials have a duty to "complete adjudication of visa applications . . . within a reasonable time" under "the APA and State Department regulations." *See Ahmed*, 2024 WL 4903771, at *4 (collecting cases).

11

In a Notice of Supplemental Authority, the Defendants argue that the D.C. Circuit's recent decision in *Karimova v. Abate*, No. 235178, 2024 WL 3517852 (D.C. Cir. July 24, 2024), called that well-established theory into question. *See* Defs.' Notice of Suppl. Authority, ECF No. 10. *Karimova* held that § 555(b) of the APA "does not . . . place upon consular officers a 'crystal-clear legal duty'" to re-adjudicate a visa. *Id.*, 2024 WL 3517852, at *3 (quoting *In re Center for Biological Diversity*, 53 F.4th 665, 670 (D.C. Cir. 2022)). But *Karimova* is not controlling because the plaintiff in that case relied solely on Section 555(b), which the panel rejected.[4] *See id.* Here, the Plaintiffs cited Section 555(b) but *also* grounded their argument in three alternative provisions: the Mandamus Act and Sections 706(1) and (2) of the APA. *See* Compl. ¶¶ 100–18 (Mandamus), ¶¶ 119–34 (§ 706(2) of the APA); ¶¶ 135–46 (§ 706(1) of the APA). The Court agrees with others in this District that have found a clear and non-discretionary duty in both provisions. *See Vulupala*, 438 F. Supp. 3d at 98 ("The Supreme Court has held that under the APA, where 'an agency failed to take a discrete agency action that it is required to take . . . the court can compel the agency to act [although it] has no power to specify what th[at] action must be.'" (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63–65 (2004))).

In any event, because the Plaintiffs fail to plausibly plead an unreasonable delay, the Court "need not scour [the] Plaintiffs' complaint and opposition" to find a duty when "their claims fail

---

[4] Like many courts in this district, this Court is reluctant to ascribe significance to a decision the D.C. Circuit chose not to publish. *See, e.g.*, *Hajizadeh v. Blinken*, No. 23-cv-1766, 2024 WL 3638336, at *3 (D.D.C. Aug. 2, 2024) (declining to follow *Karimova* because it is an unpublished decision and "a panel's decision to issue an unpublished disposition means that the panel sees no precedential value in that disposition"); *see also* D.C. Cir. R. 36(e)(2). The Court is also dubious of the government's argument in *Karimova* that a "refusal" that sends the visa application into an administrative processing queue is a final decision.

on the merits." *Motevali v. Blinken*, No. 23-cv-2133, 2024 WL 3580937, at *5 (D.D.C. July 30, 2024).

### D.     Unreasonable Delay

Turning to the merits, the Defendants argue that the Plaintiffs have failed to state a claim for unreasonable delay on which relief can be granted. Defs.' Mot. at 40. The Plaintiffs' claims under the APA and the Mandamus Act share the same standards for obtaining relief. *See Kangarloo v. Pompeo*, 480 F. Supp. 3d 134, 142 (D.D.C. 2020) ("The standard for undue delay under the Mandamus Act . . . is identical to the APA standard."). The key question in an unreasonable delay inquiry is "whether the agency's delay is so egregious as to warrant mandamus." *Rohmeena v. Bitter*, No. 23-cv-2754, 2024 WL 3898549, at *2 (D.D.C. Aug. 22, 2024) (cleaned up). Unreasonable delay is measured by six factors derived from a single case: the *Telecommunications Research and Action Center v. F.C.C. (TRAC)*, 750 F.2d 70 (D.C. Cir. 1984). These factors, known as the "TRAC factors," are as follows:

1. the time agencies take to make decisions must be governed by a rule of reason;

2. where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

3. delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

4. the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

5. the court should also take into account the nature and extent of the interests prejudiced by delay; and

6. the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Khazaei*, 2023 WL 6065095, at *6 (cleaned up). The Plaintiffs argue that there is "insufficient information" at the motion-to-dismiss stage to conduct a *TRAC* analysis. *See* Pls.' Opp'n at 46, ECF No. 6 (citing *Liu v. Chertoff*, No. 06-cv-3297, 2007 WL 1202961, at *3 (C.D. Ill. Apr. 23, 2007); *Agbemaple v. I.N.S.*, No. 97-cv-8547, 1998 WL 292441, at *2 (N.D. Ill. 1998)). But here, "binding precedent from the D.C. Circuit—not to mention a cavalcade of case law from this District—shows otherwise." *Yazdanpanahderav v. U.S. Dep't of State*, No. 23-cv-3688, 2024 WL 3010874, at *4 (D.D.C. June 14, 2024) (citing *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340–46 (D.C. Cir. 2023). Importantly, courts applying the *TRAC* factors at the motion-to-dismiss stage apply them "not to determine whether there has been an unreasonable delay, but to determine if a plaintiff's complaint alleged facts sufficient to state a plausible claim for unreasonable administrative delay." *Giza v. Blinken*, No. 23-cv-1641, 2024 WL 3967284, at *5 (D.D.C. Aug. 27, 2024). Here, the *TRAC* factors point to one conclusion: the Plaintiffs' complaint does not plausibly allege an unreasonable delay.

        **1.**     ***TRAC* Factors One and Two**

*TRAC* factor one, which asks whether the response time is governed by a "rule of reason," is widely understood to be the "most important" aspect of the analysis. *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008). It is often combined with the second *TRAC* factor, which assesses whether the Defendants provided any "Congressional timetable." *Azeez*, 2024 WL 3924565, at *4 (quoting *Giliana v. Blinken*, 596 F. Supp. 3d 13, 20 (D.D.C. 2022)). Together, these ask whether "there [is] any rhyme or reason—congressionally prescribed or otherwise—for [the] agency's delay." *Ahmed*, 2024 WL 4903771, at *5 (alterations in original) (quoting *Rashidian v. Garland*, No. 2023-cv-1187, 2024 WL 1076810, at *6 (D.D.C. Mar. 8, 2024)).

*TRAC* factors one and two are fact-dependent inquiries that "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful." *Mashpee Wampanoag Tribal Council*, *Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003). Instead, when faced with this question, courts analyze—among other factors—the "significance (and permanence) of the outcome, and the resources available to the agency." *Id.* Here, the Defendants have not provided a rule of reason, but the factors still weigh in their favor. Mr. Alamouti is seeking to permanently reside in the United States, and decisions to permanently admit foreign citizens may trigger national security concerns. *See Zandieh v. Pompeo*, No. 20-cv-919, 2020 WL 4346915, at *6 (D.D.C. July 29, 2020) ("The Court must be mindful of the 'national security interests implicated and the volume of applications being processed.'" (quoting *Bagherian v. Pompeo*, No. 19-cv-1049, 2020 WL 674778, at *2 (D.D.C. Feb. 11, 2020))). Further, without a mandatory timetable for which visas must be adjudicated, courts in this District "typically turn to case law as a guide," *Niyomwungere*, 2024 WL 5075827, at *4, and here, case law is firmly on the Defendants' side.

As an initial matter, while the Plaintiffs understandably characterize their wait time as approaching five years, this District starts the clock before the last government agency action, *see Barazandeh v. U.S. Dep't of State*, No. 23-cv-1581, 2024 WL 341166, at *7 n.7 (D.D.C. Jan. 30, 2024), which here was the interview at the embassy in September 2023, *see* Compl. ¶ 4. Mr. Alamouti's interview occurred seventeen months before the date of this order. While there is currently "[n]o bright line[]" that makes a delay per se unreasonable, seventeen months is simply not enough. *See Arab*, 600 F. Supp. 3d at 70. Courts in this District label delays "between three to five years" as reasonable and generally extend the "unreasonable" label to delays more than five years. *See Ahmed*, 2024 WL 4903771, at *6 (collecting cases); *see also Mirbaha v. Pompeo*, 513

15

F. Supp. 3d 179, 185–86 (D.D.C. 2021) (finding a twenty-seven-month delay reasonable). At the time they filed this lawsuit, the Plaintiffs had been waiting just seven months for a decision. *See* Compl. (filed on April 10, 2024; Mr. Alamouti's interview occurred in September 2023). This window of time not only falls outside what this District considers unreasonable but falls far below the average recorded wait times for I-130 visas in both 2020 (8.3 months) and 2024 (11.7 months). *See* USCIS, *Historical National Medican Processing Time for All USCIS Offices*, https://perma.cc/DY64-UN7D. Based on these facts, both *TRAC* factors one and two favor the Defendants.

### 2. *TRAC* Factor Four

*TRAC* factor four evaluates the effect on "competing agency priorities." *Da Costa*, 80 F.4th at 343. This factor "strongly disfavors" plaintiffs whose request is akin to cutting the line of applications ahead of them, which would "disrupt competing agency priorities with no overall improvement in the [agency's] backlog." *Id.* The appropriate question in this inquiry then is whether a judicial order putting the Plaintiffs' request "at the head of the queue" effectively "moves all others back one space and produces no net gain." *In re Barr Laboratories*, 930 F.2d 72, 75. (D.C. Cir. 1991). The Plaintiffs allege that the State Department does not resolve administrative processing requests on a "first-in-first-out-basis." Pls.' Opp'n. at 55 ("Since the administrative processing requests are NOT addressed or resolved on a first-in-first-out basis, it is evident that no queue exists."). But this contention seems "entirely speculative" as the Plaintiffs have "pleaded no facts to support it." *Niyomwungere*, 2024 WL 5075827, at *5. Besides, no matter the makeup of the line, an order from this Court compelling a decision on Mr. Alamouti's visa application would "inevitably entail a judicial reordering of the Department's priorities." *Id.* (quoting *Khazaei*, 2023 WL 6065095, at *7). *TRAC* factor four thus favors the Defendants.

### 3. *TRAC* Factors Three and Five

*TRAC* factors three and five ask whether the facts here render judicial intervention "more justified." *Ahmed*, 2024 WL 4903771, at * 7. *TRAC* factor three specifically asks whether "delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake." *TRAC*, 750 F.2d at 80. Relatedly, *TRAC* factor five evaluates the "nature and extent of the interests prejudiced by delay." *Da Costa*, 80 F.4th at 344. These factors favor the Plaintiffs. Mr. Motevali and Mr. Alamouti have alleged that expediting their visa application would alleviate ongoing harm to their wellbeing. The Plaintiffs report that they are "suffering from extreme emotional and psychological harm" due to the lack of a decision on their visa, leaving them in a world of "uncertainty of their family's future." Compl. ¶ 96. An order compelling a final decision would not only address this injury but would align with the foundational goal of the INA: to reunite families. *TRAC* factors three and five favor Plaintiffs.

### 4. *TRAC* Factor Six

Finally, *TRAC* factor six asks the court to consider "whether there is any impropriety lurking behind agency lassitude." *Da Costa*, 80 F.4th at 345 (cleaned up). As the Plaintiffs have not alleged impropriety, this factor is neutral.

\*\*\*

The Court recognizes the very real injuries Mr. Motevali and Mr. Alamouti have suffered because of the delay in this case. In their own words, the delay has turned what the family intended to be a "very temporary separation" into "a nightmare of living apart for years." Compl. ¶ 89. More generally, the Court is troubled by the documented delays and dysfunction in the visa adjudication system. Here, Mr. Motevali initiated the application process on behalf of his father nearly five years ago—a process the State Department currently advertises as one with "no waiting period,"

U.S. Citizenship & Immigration Servs., *I Am a U.S. Citizen… How Do I Help My Relative Become a U.S. Permanent Resident?*, M-555B (Oct. 2013), https://perma.cc/4LND-W32H. But after analyzing the *TRAC* factors, the Court concludes that the Plaintiffs have not plausibly alleged that the Defendants' delay is unreasonable. Consequently, the Court dismisses the Complaint.

## CONCLUSION

For the foregoing reasons, the Court grants the Defendants' Motion to Dismiss, ECF No. 5. A separate order will issue.

SPARKLE L. SOOKNANAN
United States District Judge

Date:   March 21, 2025